# Exhibit 4



# NATIONAL ARBITRATION FORUM

## DECISION

Lockheed Martin Corporation v. Wesley Kenzie
Claim Number: FA1204001437907

## PARTIES

Complainant is **Lockheed Martin Corporation** ("Complainant"), represented by **Lynne M. J. Boisineau** of **McDermott Will & Emery LLP**, California, USA. Respondent is **Wesley Kenzie** ("Respondent"), Canada.

## REGISTRAR AND DISPUTED DOMAIN NAMES

The domain name at issue are <**lockheedmarton.com**> and <**lockheedmartun.com**>, registered with **GoDaddy.com, LLC**.

## PANEL

The undersigned certifies that he or she has acted independently and impartially and to the best of his or her knowledge has no known conflict in serving as Panelist in this proceeding.

Beatrice Onica Jarka as Panelist.

## PROCEDURAL HISTORY

Complainant submitted a Complaint to the National Arbitration Forum electronically on April 3, 2012; the National Arbitration Forum received payment on April 9, 2012.

On April 4, 2012, GoDaddy.com, LLC confirmed by e-mail to the National Arbitration Forum that the <**lockheedmarton.com**> and <**lockheedmartun.com**> domain names are registered with GoDaddy.com, LLC and that Respondent is the current registrant of the names. GoDaddy.com, LLC has verified that Respondent is bound by the GoDaddy.com, LLC registration agreement and has thereby agreed to resolve domain disputes brought by third parties in accordance with ICANN's Uniform Domain Name Dispute Resolution Policy (the "Policy").

On April 10, 2012, the Forum served the Complaint and all Annexes, including a Written Notice of the Complaint, setting a deadline of April 30, 2012 by which Respondent could file

a Response to the Complaint, via e-mail to all entities and persons listed on Respondent's registration as technical, administrative, and billing contacts, and to postmaster@lockheedmarton.com and postmaster@lockheedmartun.com. Also on April 10, 2012, the Written Notice of the Complaint, notifying Respondent of the e-mail addresses served and the deadline for a Response, was transmitted to Respondent via post and fax, to all entities and persons listed on Respondent's registration as technical, administrative and billing contacts.

A timely Response was received and determined to be complete on April 30, 2012.

Complainant's Additional Submission was received on May 2, 2012 and is deemed compliant with Supplemental Rule 7.

The Respondent has also submitted an additional response on May, 6 and is deemed compliant with Supplemental Rules 7.

On May 3, 2012, pursuant to Complainant's request to have the dispute decided by a single-member Panel, the National Arbitration Forum appointed Beatrice Onica Jarka as Panelist.

Having reviewed the communications records, the Administrative Panel (the "Panel") finds that the National Arbitration Forum has discharged its responsibility under Paragraph 2(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") "to employ reasonably available means calculated to achieve actual notice to Respondent" through submission of Electronic and Written Notices, as defined in Rule 1 and Rule 2.

## RELIEF SOUGHT

Complainant requests that the domain name be transferred from Respondent to Complainant.

## PARTIES' CONTENTIONS

A. Complainant

Complainant alleges:

- Complainant owns rights in its LOCKHEED MARTIN mark by virtue of its trademark registrations with the United States Patent and Trademark Office ("USPTO") (*e.g.*, Reg. No. 2,022,037 registered December 10, 1996).
- Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names are confusingly similar to Complainant's LOCKHEED MARTIN mark.
- Respondent is guilty of typosquatting.
- Respondent is not affiliated with Complainant and is not licensed to use Complainant's mark.

- Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names resolve to Complainant's website.
- Respondent contacted Complainant regarding a "Black Hole email vulnerability."

B. Respondent
- The disputed domain names are confusingly similar to Complainant's mark.
- Respondent registered the disputed domain names for the purpose of providing Internet security for Complainant, from which Respondent does not receive commercial gain.
- Respondent acts in good faith by resolving the <lockheedmarton.com> and <lockheedmartun.com> domain names to Complainant's official website.
- Respondent forwards all e-mails it receives to Complainant.
- Respondent researches e-mail vulnerability and provides information security.
- Respondent protects Complainant from malevolent entities.
- Respondent did not attempt to transfer or sell the disputed domain name.

C. Additional Submissions
Complainant alleges in its Additional Submission:
- Respondent admits Complainant has rights in its LOCKHEED MARTIN mark and that the disputed domain names are confusingly similar to the mark.
- Respondent is attempting to pass itself off as Complainant, which is evidence that Respondent lacks rights and legitimate interests in the disputed domain names.
- Respondent did not identify itself as commonly known by the disputed domain names.
- Respondent's passing off is evidence of bad faith registration and use as well.
- Respondent is attempting to commercially benefit from the disputed domain names by contracting with Complainant to provide security services.
- Respondent's intent to use the domain name registration and research regarding email vulnerabilities to solicit business from the companies for which he has registered confusingly similar typosquatted domain names, has been declared on Respondent's own blog postings

By its Additional Submissions, the Respondent asserts that:
- It has provided evidence, which has been confirmed by the Complainant, that Internet browser users attempting to go to the disputed domains are automatically and transparently re-directed to the Complainant's legitimate web site <lockheedmartin.com>.
- The Respondent has no web site and no "goods" associated with either of the disputed domains.
- The Respondent is providing a service that only benefits the Complainant in this regard, and submits that this is clearly a *bona fide* service.

- The Respondent has not created the e-mail vulnerability he is studying, but rather is passively studying a preexisting information security vulnerability that the Complainant appears to have been not previously aware of, and which the Complainant was previously at risk of malevolent exploitation.
- The Respondent includes in **Annex a, b and c** copies of a web site operated by an Information Security Think Tank called Godai Group which published a similar research report in September 2011 on the subject of vulnerable e-mails which it has called Doppelganger Domains. The Doppelganger Domains vulnerability was widely reported on, but the Complainant has provided no evidence that it understands the risks of this vulnerability, nor any evidence that it is not willfully negligent in not implementing protections from these risks.
- The Respondent is not passing himself off as the Complainant when all Internet browser users and misspelled e-mail users of the disputed domains are immediately and transparently passed along to the Complainant for its own record keeping and analysis.
- The Respondent has not admitted to intercepting e-mail messages. The Respondent is passively observing unencrypted misaddressed e-mail sent over the public Internet.
- The Respondent has taken care to not read the contents of any of the observed e-mails, and to not allow anyone else to read them other than the Complainant. Copies of observed e-mails are automatically and immediately and transparently forwarded to the Complainant in order to help the Complainant address this information security vulnerability they are at risk of having exploited. (via the Respondent's <securikai.com> blog website) are not *bona fide* services.
- All of the Complainant's Additional Submission should be rejected because of an obvious violation of the Complainant's certification in 17(c) with regard to its Exhibit 1, which provides for comments of others regarding the Respondent's action.
- The Respondent has never demanded any money from anyone and the Complainant has no evidence to support this claim.
- The Complainant's Additional Submission violates Rule 7(f) of the applicable UDRP Supplemental Rules since it amends the Complaint by introducing a claim of Passing Off, and as such should be rejected in its entirety.
- Original research and investigative journalism are legitimate pursuits that the Respondent is responsibly conducting for the benefit of the Complainant and for the benefit of many others.
- These pursuits enjoy, or should enjoy, a reasonable measure of protection from frivolous claims of typosquatting and assumptions of bad faith.

## FINDINGS

The Complainant has proven all the three elements of the Policy.

## DISCUSSION

Paragraph 15(a) of the Rules instructs this Panel to "decide a complaint on the basis of the statements and documents submitted in accordance with the Policy, these Rules and any rules and principles of law that it deems applicable."

Paragraph 4(a) of the Policy requires that Complainant must prove each of the following three elements to obtain an order that a domain name should be cancelled or transferred:

(1) the domain name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and
(2) Respondent has no rights or legitimate interests in respect of the domain name; and
(3) the domain name has been registered and is being used in bad faith.

### Identical and/or Confusingly Similar

Complainant alleges that it owns multiple trademark registrations with the USPTO for its LOCKHEED MARTIN mark (*e.g.*, Reg. No. 2,022,037 registered December 10, 1996).

Given that, the Panel finds that Complainant's USPTO trademark registrations are sufficient to establish Complainant's rights in the LOCKHEED MARTIN under Policy ¶ 4(a)(i), regardless of where Respondent resides or operates. *See Expedia, Inc. v. Tan*, FA 991075 (Nat. Arb. Forum June 29, 2007) ("As the [complainant's] mark is registered with the USPTO, [the] complainant has met the requirements of Policy ¶ 4(a)(i)."); *see also Williams-Sonoma, Inc. v. Fees*, FA 937704 (Nat. Arb. Forum Apr. 25, 2007) (finding that it is irrelevant whether the complainant has registered its trademark in the country of the respondent's residence).

Complainant claims Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names are confusingly similar to Complainant's LOCKHEED MARTIN mark because the disputed domain names alter Complainant's mark by one letter: exchanging the letter "i" for the letters "o" or "u." Complainant further contends that the disputed domain names contain the generic top-level domain ("gTLD") ".com." The Panel notes that the disputed domain names do not contain the space found within the mark. Based on these alterations, the Panel determines that Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names are confusingly similar to Complainant's LOCKHEED MARTIN mark pursuant to Policy ¶ 4(a)(i). *See Belkin Components v. Gallant*, FA 97075 (Nat. Arb. Forum May 29, 2001) (finding the <belken.com> domain name confusingly similar to the complainant's BELKIN mark because the name merely replaced the letter "i" in the complainant's mark with the letter "e"); *see also Intelius, Inc. v. Hyn*, FA 703175 (Nat. Arb. Forum July 5, 2006) (finding the <intellus.com>

domain name to be confusingly similar to the complainant's INTELIUS mark because the domain name differed from the mark by one letter and was visually similar); *see also Am. Int'l Group, Inc. v. Domain Admin. Ltd.*, FA 1106369 (Nat. Arb. Forum Dec. 31, 2007) (finding that "spaces are impermissible and a generic top-level domain, such as '.com,' '.net,' '.biz,' or '.org,' is required in domain names.  Therefore, the panel finds that the disputed domain name[<americangenerallifeinsurance.com>] is confusingly similar to the complainant's [AMERICAN GENERAL] mark."); *see also Bond & Co. Jewelers, Inc. v. Tex. Int'l Prop. Assocs.*, FA 937650 (Nat. Arb. Forum Apr. 30, 2007) (finding that the elimination of spaces between terms and the addition of a gTLD do not establish distinctiveness from the complainant's mark under Policy ¶ 4(a)(i)).

In Complainant's Additional Submission, Complainant notes that Respondent admits Complainant has rights in its LOCKHEED MARTIN mark and that the disputed domain names are confusingly similar to the mark.

By its Response the Respondent admits that Complainant owns rights in the LOCKHEED MARTIN mark and that the disputed domain name typo errors of the Complainant's trademark, but alleges that the disputed domain names had been registered for the purpose of providing Internet security for Complainant, from which Respondent does not receive commercial gain.

For the purpose of the first element of the Policy, the Panel considers relevant only the finding that the disputed domain names are confusingly similar with the Complainant's trademarks.

Therefore, the Panel finds that the disputed domain name is confusingly similar with the Complainant's trademark and consequently the Complainant has proven the first element of the Policy.

### Rights or Legitimate Interests

The Complainant must first make a *prima facie* case that Respondent lacks rights and legitimate interests in the disputed domain name under Policy ¶ 4(a)(ii), and then the burden shifts to Respondent to show it does have rights or legitimate interests. *See Hanna-Barbera Prods., Inc. v. Entm't Commentaries*, FA 741828 (Nat. Arb. Forum Aug. 18, 2006) (holding that the complainant must first make a *prima facie* case that the respondent lacks rights and legitimate interests in the disputed domain name under UDRP ¶ 4(a)(ii) before the burden shifts to the respondent to show that it does have rights or legitimate interests in a domain name); *see also AOL LLC v. Gerberg*, FA 780200 (Nat. Arb. Forum Sept. 25, 2006) ("Complainant must first make a prima facie showing that Respondent does not have rights

or legitimate interest in the subject domain names, which burden is light. If Complainant satisfies its burden, then the burden shifts to Respondent to show that it does have rights or legitimate interests in the subject domain names.").

Complainant argues that Respondent is not licensed or authorized to use Complainant's LOCKHEED MARTIN mark. Complainant claims that Respondent is also not affiliated with Complainant in any way. In Complainant's Additional Submission, Complainant notes that Respondent did not argue that it is commonly known by the disputed domain names in its Response. The Panel notes that the WHOIS information lists "Wesley Kenzie" as the registrant of the <lockheedmarton.com> and <lockheedmartun.com> domain names, which the Panel determines is not similar to the disputed domain names. Based on this evidence, the Panel holds that Respondent is not commonly known by the <lockheedmarton.com> and <lockheedmartun.com> domain names for the purposes of Policy ¶ 4(c)(ii). *See Charles Jourdan Holding AG v. AAIM*, D2000-0403 (WIPO June 27, 2000) (finding no rights or legitimate interests where (1) the respondent is not a licensee of the complainant; (2) the complainant's prior rights in the domain name precede the respondent's registration; (3) the respondent is not commonly known by the domain name in question); *see also Reese v. Morgan*, FA 917029 (Nat. Arb. Forum Apr. 5, 2007) (concluding that the respondent was not commonly known by the <lilpunk.com> domain name as there was no evidence in the record showing that the respondent was commonly known by that domain name, including the WHOIS information as well as the complainant's assertion that it did not authorize or license the respondent's use of its mark in a domain name).

Complainant contends that Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names resolve to Complainant's official website. Complainant alleges that Respondent registered the disputed domain names as a part of an attempt to obtain business from Complainant. Complainant asserts that Respondent contacted Complainant in order to explain to Complainant about "Black Hole email vulnerability" and provided Complainant with a link to Respondent's business website. Complainant alleges that this information sufficiently proves that Respondent is not making a Policy ¶ 4(c)(i) *bona fide* offering of goods or services or a Policy ¶ 4(c)(iii) legitimate noncommercial or fair use of the disputed domain names.

Complainant argues that Respondent's <lockheedmarton.com> and <lockheedmartun.com> domain names evidence Respondent's typosquatting behavior. Complainant claims that Respondent's disputed domain names differ from Complainant's mark by replacing the letter "i" in Complainant's mark with the letter "o" or "u." The Respondent implicitly admits that the disputed domain names could be interpreted as typosquatting, but because such registration are actually done for the purpose of original research and investigative journalism they should enjoy a reasonable measure of protection

from frivolous claims of typosquatting and assumptions of bad faith.

The Panel cannot ignore that there is a declared Respondent's intent to use the domain name registration and research regarding e-mail vulnerabilities to solicit business from the companies for which he has registered confusingly similar typosquatted domain names. Nevertheless, the Respondent claims noncommercial use of the disputed domain names.

It is the opinion of the Panel that no one could provide unsolicited services or subject a third party to a research programme without its consent and by using typos variation of a protected trademark.

Moreover, according to the Policy ¶ 4(c)(iii), the noncommercial use of a domain name in order to demonstrate rights or legitimate interest has to be legitimate.

The Panel finds it difficult to identify a legitimate use of the disputed domain names, as it is obvious that the Respondent intentionally created the possibility to receive the so called "Black Hole" correspondence of the Complainant. Even if the declared purpose was to research on this aspect or to offer alleged services of protection to the Complainant, the Panel cannot ignore that this has been done with the use of the Complainant's unauthorized trademark.

Moreover, in the Complainant's Additional Submission, Complainant argues that Respondent is passing itself off as Complainant through e-mails and using the disputed domain names to resolve to Complainant's official website.

All these elements taken together cannot validate, in the opinion of this Panel a *bona fide* offering of service by the Respondent or a legitimate noncommercial use of the Complainant's trademark.

Moreover considering the evidences brought by the Complainant, which Panel chooses to consider, especially Exhibit 1 to the Complainant's Additional Submissions, the Panel is not actually persuaded that the Respondent is not pursuing financial gain from the registration of the disputed domain names.

On the balance of probabilities, the Panel finds that the Respondent's unauthorized use of the Complainant 's trademark could not amount to rights or legitimate interests. *See Direct Line Ins. plc v. Low-cost-domain*, FA 1337658 (Nat. Arb. Forum Sept. 8, 2010) ("The Panel finds that using Complainant's mark in a domain name over which Complainant has no control, even if the domain name redirects to Complainant's actual site, is not consistent with the requirements of Policy ¶ 4(c)(i) or ¶ 4(c)(iii) . . ."); *see also Better Existence with HIV v.*

*AAA*, FA 1363660 (Nat. Arb. Forum Jan. 25, 2011) (finding that "even though the disputed domain name still resolves to Complainant's own website, Respondent's registration of the disputed domain name in its own name fails to create any rights or legitimate interests in Respondent associated with the disputed domain name under Policy ¶ 4(a)(ii)").

Therefore, the Panel determines that Respondent lacks rights and legitimate interests in the <lockheedmarton.com> and <lockheedmartun.com> domain names under Policy ¶ 4(a)(ii) and consequently has proven the second element of the Policy.

### Registration and Use in Bad Faith

Complainant contends that Respondent uses the <lockheedmarton.com> and <lockheedmartun.com> domain names to resolve to Complainant's official website. Complainant argues that Respondent is attempting to commercially benefit by using the disputed domain names as a basis to contract with Complainant to provide security services. Complainant claims that registration and use of the disputed domain names evidences bad faith registration and use under Policy ¶ 4(a)(iii).

In Complainant's Additional Submission, Complainant accuses Respondent of attempting to pass itself off as Complainant by using the <lockheedmarton.com> and <lockheedmartun.com> domain names to receive e-mails from Internet users and then resolve the domain names to Complainant's official website.

Respondent alleges that it does not commercially benefit from the <lockheedmarton.com> and <lockheedmartun.com> domain names because the domain names resolve to Complainant's official website. Respondent additionally argues that Respondent forwards all e-mails it receives to Complainant. Respondent contends that it provides this security service to Complainant because Respondent studies e-mail and information security. Respondent asserts that it never intended to sell the disputed domain names to Complainant. Respondent claims that its legitimate use of the domain name is evidence of Respondent's good faith.

As mentioned previously, the Panel cannot consider the use of the disputed domain names as legitimate. It is obvious that it was the Respondent itself that created the alleged vulnerability of Complainant's trademark, and his purpose was to offer services to the Complainant, looking for a financial gain. Even if the Respondent has not yet actually requested any payment, the efforts he put in offering unsolicited protection to the Complainant's trademarks, could be, on the balance of probabilities, an indication that the Respondent's intent is in pursuing financial gain from the unauthorized use of the misrepresented versions of the Complainant's trademark. In the opinion of the Panel this

conduct is sufficient to prove bad faith registration and use under Policy ¶ 4(a)(iii).").

## DECISION

Having established all three elements required under the ICANN Policy, the Panel concludes that relief shall be **GRANTED.**

Accordingly, it is Ordered that the **<lockheedmarton.com>** and **<lockheedmartun.com>** domain name be **TRANSFERRED** from Respondent to Complainant

Beatrice Onica Jarka
Panelist
May 17, 2012

Click Here to return to the main Domain Decisions Page.

Click Here to return to our Home Page